Good morning, Your Honors, and may it please the Court, I'm Thomas Burns, and I represent Jennifer Jenkins. This is an overtime case between a paralegal and a law firm, and in it, the District Court committed a manifest error of law or fact when it overlooked or misunderstood the regulations defining what counts as work and what is a work week, and the week that we're talking about in particular is the week from Sunday, May 19, through Saturday, May 25, 2013, which is when the APP trial took place. The regulations make clear that waiting is working, and specifically, I'm talking about 29 CFR Section 785.15, which defines on duty, and it says that the question is whether an And it gives a series of examples, such as a stenographer reading a book while waiting for dictation, a messenger doing a crossword puzzle waiting for assignments, factory worker talking to his coworkers while waiting for machinery to be repaired. And then a related regulation is Section 785.19A, which defines meals, and that, it says, the standard is whether the employee is completely relieved from duty during the meal, and it gives, like, a little bit more flavor to that. It says an employee is not relieved if she is required to perform any duties, whether active or inactive, while eating. And interpreting these regulations, this court held that in Kohlheim against Glynn City, and said, well, firefighters who are eating meals, they're not relieved from duty during their mealtimes, so that counts as work, and it needs to be added up when you're doing the overtime calculation. Now, here the facts are that Ms. Jenkins, Mr. Anton, and the expert were discussing the trial proceedings the entire time during the lunch, which was an hour and a half each day. And in fact, Ms. Jenkins testified that they were at the facility from 8 a.m. to 5 p.m. each day, which is, you know, a nine-hour period of time. And then the order, the district court says, well, that doesn't count as lunch because you didn't identify any work you were actually performing. That's not good enough. You need to be more specific. And because you didn't, you know, just chit-chatting about what's going on doesn't count as work, therefore I'm striking that time. That ruling didn't take account of these regulations or this court's decision in Kohlheim against Glynn City, and that's why it's legally mistaken. So what do we do from there? I guess Kohlheim, though, is a little bit different, right? Because in Kohlheim, we said that the firefighters were subject to significant affirmative responsibilities during that period. And what more is there really on this record in terms of significant substantive responsibility other than, as you say, kind of chit-chatting? Unfortunately, there's very little in this record about what was taking place. What Mr. Anton, the lawyer, concedes is like, well, we were talking about the case, but he says it wasn't really work. Ms. Jenkins says we were talking about the case the whole time, and that's kind of this unclear evidentiary situation that we're in. From my perspective, the only reasonable inference that I think can be drawn from that is that that's actually work. They're talking about strategy, they're talking about what has taken place and then what's going to take place in the afternoon session. So to me, it's sort of beggar's belief to think that that couldn't be considered work. And really, the question isn't like, what was accomplished? It's more about, was Ms. Jenkins compelled to be there? There could have been a situation, for example. But in the same way you think that perhaps my law clerks feel compelled to eat lunch with me just because every so often? I went through that myself. When I was a law clerk, yes, that is definitely true, although it's a very obviously enjoyable experience to learn, you know, the judges. We're talking about the cases the whole time, I can assure you. Of course. But the question is really compulsion to be there. And here, like, you know, you can imagine that there could have been a fact where Mr. Anton said, Ms. Jenkins, we're going to lunch. You're free to go and do whatever you want. I'm just going to talk to the expert. You can be here if you want, or if you want to go off-site or just eat somewhere else, that's fine. Then I think that time would probably be considered a bona fide meal and shouldn't be counted toward overtime. But we don't have that fact. We just have this general agreement that the case was discussed with the expert. To me, I think the only reasonable inference that can be drawn there is that's work. So it should be counted toward the overtime calculation. An additional consideration, not only do you have that lunch sandwich in the middle, but you've also got the bookends of getting to the facility before and after, and perhaps that should count as overtime as well. Really the question would be, what's the appellate relief that you could order here? You could vacate the judgment and say, hey, district judge, there are these regulations out there. This is what we held in this one case, and please do the analysis in the first instance, and then if there's another appeal, we can take up the issue then. Actually, I should point out, remember that the district court's not completed the entire analysis because the district court didn't ever get to the Commerce Clause question. No matter what appellate relief you were to order here, it couldn't be to reverse the judgment and order the district court to enter judgment in our favor. It would just be like, hey, district court, we're vacating the judgment, and please finish the analysis. So where does that leave us? It could leave us where the district court would say, well, from Tuesday to Friday, that's thirty-six hours if he counts the 8 a.m. to 5 p.m. as . . . Of course, the problem you've got here is the findings the district court makes of fact. How do we deal with them? You've got a square finding by the district court that it found Anton's testimony to be more credible, and the district court offered a number of reasons for that, including that Anton's testimony was corroborated by Hayes, Schneecki, and Nedes, and so on that basis, the court, no matter how you come at it, concluded that Jenkins had not met her burden of proof, that she indeed worked more than 40 hours in any given week, and therefore was not entitled to overtime compensation. Isn't the case, after you scrape away everything as simple as that? I don't think so. I think of that . . . Tell me what I'm missing. Okay. I think that pertains to the entire scope of her work for the thirty-six weeks, and he says, well, I find these witnesses more credible than these other witnesses. When I'm talking about this one particular week for the APP trial, I think the judge carved that out and looked at that with more focus, so I think there's some general agreement about when clocking in and clocking out was taking place, and then the question really is just what does the law say about those clock . . . Right. So basically, the district court said she just didn't have much to do. It was as simple as that, and if you want to know why, I didn't have much to do. I didn't have a lot of cases in the inventory. I didn't have a lot of work, and so it's no surprise that I had no occasion to give her a lot to do. Here are the number of cases, et cetera, et cetera. This is what I did, and look at what these other folks said, too. Right. A couple of issues. I think that . . . Not in a granular way, but in a painting with a broader kind of brush, but I'm still asking why that isn't enough to sustain what the trial judge did after a bench trial. Right. A couple of things. I think that's conflating the idea of billing between working, and it's overlooking this part about waiting is working under the regulations, so if a paralegal is just sitting at her desk doing nothing, she's working because she's waiting for her next assignment. The fact that she might not be billing all those hours, that's perhaps an unfortunate business practice for the law firm, but not . . . It might suggest that she was there from 9 to 5 with a time clock, but it certainly bears heavily on whether she had occasion to work beyond the normal work hours in a day if there was nothing for her to do. Yes. One might reasonably infer from that that she wasn't there over time. If she was there from 9 to 5 and didn't have much to do, and she turned around and said, oh, I had a whole lot to do, and I was there extra, you might infer from how little there was in general that she had no occasion to work over time. I don't think that's a reasonable inference. Why not? A couple of reasons. Again, the schedule was 8.30 to 5.15, so that is 8.8 hours, multiply that by 5 days, that you subtract lunch, which she claims that she never took, that she was at her desk, that would still put you around a little bit over 40 hours, and then she's claiming that she's working in the evening. Granted, I think that would bear on the witness's credibility. If you believe that there's not very much work to do in the law firm, then why are you working in the evening? I think that's an appropriate consideration, but . . . Can we disregard that the trial court obviously did not believe or credit her? I think . . . Or was he not clear enough about what he thought? I think it's essentially a harmless error analysis that I think you're talking about. The error that I was pointing to is that he didn't apply this Anderson case to the burden shifting. I'm the appellant, I bear the burden of demonstrating the error was harmful, but I think it was because you can't . . . What I'm really asking you is even if you're right about Anderson, so what? Why would it matter here, given what we have factually? I think it would affect his determination of the credibility of the witnesses. You don't have a proper district court ruling to review here because he hasn't done the analysis in the correct way. An analogy you might draw is procedural error in a criminal case on a sentencing issue where the guidelines were miscalculated. You say, well, the judge did this and here's his ruling, but he didn't calculate the guidelines correctly so we're not really sure what his sentence would have been had he done it correctly. We're vacating the judgment. District judge, please do the sentencing analysis with the guidelines calculated correctly. The only way that the judge gets out of that in that circumstance is when he says, I'm going to sentence this guy regardless of the guidelines to 100 months or something. Then you know, well, the error is harmless because he said that regardless of the guidelines he would have done whatever. I think you can't divorce the legal standard from the factual findings and that's why we're asking you to vacate and remand for the judge to finish that analysis. I want to make a point then about the work week. There's a legal argument and a factual argument that I have here. The legal argument is that I think the default rule under section 778.105 is that it is the calendar week unless the employer sets up something else. That's essentially a plain language argument that I have based on the language of the regulation. Obviously, whenever the employer sets it, that's what it is. An employer can set it explicitly or implicitly. The record here I think is clear that it was never explicitly set because Mr. Anton at doc 129 page 39 said he was not sure whether we had a regular work week. I don't think it's implicitly defined by the record because the pay stubs were twice a So how do we get from not clear plus not clear equals clear error? That's the difficulty that I'm having. That's why there's a legal argument and a factual argument. The legal argument is the default rule under the regulation is it's the calendar week unless there's explicit or implicit evidence that the work week has been set to be something else by the employer. And then I'm saying there's nothing in this record or the judge has misconstrued or made a clear error in interpreting the evidence because Mr. Anton himself said, I don't know what it is. And the pay stubs don't establish what the work week would be. So that's why we're taking that position. And so you should, for the APP trial week, count it Sunday through Saturday. Ask the judge to reconsider in light of the regulations defining on duty and meals and so forth. And then have him make a finding of fact as to the amount of work that was performed on the Monday, because all the judge said was it was extensive, but he didn't say what it precisely it was. And then once we know that, the rest of the analysis can take place. Thank you. Denobson. The work week argument, your honors, is one of the things that kind of concerned me in the appellant's answer brief. And it concerned me because of the way 29 CFR 778-105 was portrayed. It was portrayed as saying that it didn't matter which day it began on, so long as the employer establishes something different. That second part would just pull out of thin air. 29 CFR 778-105 doesn't give any preference to Sunday through Saturday, Monday through Sunday, Tuesday through Monday. It's all the same. What we have is, and I can't remember the case that I cited, but I cited it in there, that the prima facie pay week coincides with the work week. And we have evidence that the work week began on Monday. And that's exactly what Judge Moody used in his findings, saying it's been established that the work week began on Monday. Therefore, I'm saying that the pay week began on Monday. What counsel is trying to do is say that because there's no evidence at all on the issue, they should find, you should find in favor of his client. The burden at trial is going to be on Ms. Jenkins to show each aspect of her case. And if one of the aspects of her case is going to be when the pay week starts, that's something that she should have addressed, addressed through Ms. Jenkins. There is no testimony on that. The court recognized it. In fact, at the end of trial, after everything was done, the court even asked, and I believe it's in the record, asked all the attorneys whether that was even mentioned. And everyone said no. So the fault, it's a factual issue. This entire case is basically a factual issue. It was a bench trial. Counsel for plaintiff asked for it to be a bench trial. I agreed that it would be a bench trial. And the judge made factual determinations. Quite frankly, the judge didn't find Ms. Jenkins credible. When she testified, I can understand why the judge didn't find Ms. Jenkins credible. As for the lunch, and it appears that counsel isn't arguing some of the other issues, and I don't know whether this. We'll take those on break. OK. As for the lunch, this court in Kohlheim and later in Avery said basically the same thing, that what matters in a meal period case is whether the employee is subject to real limitations under personal freedom, which inure to the benefit of the employer. That wasn't proven. It was lunch. Under counsel's viewing of this case, any time a supervisor takes somebody to lunch, or even any time coworkers go to lunch together, if they talk about work at all, it becomes a working lunch. That kind of throws the whole idea of lunch on its head. What are you going to do? Prohibit your employees from going to lunch with each other? Because they might open the door, talk about work, and then all of a sudden it becomes compensable hours. Mentioning what has been happening for the last three hours as a topic of conversation, that's natural, and that's exactly what the judge found. The judge, in his order, said pretty much the same thing. There's only one subject of conversation that everyone's going to have in common, and it's talk about what happened earlier. That doesn't mean that you're sitting there strategizing everything else. In fact, Mr. Anton said that that wasn't what was happening. Maybe Ms. Jenkins said that it was, but quite frankly, the court, again, did not find Ms. Jenkins' testimony credible at all. Even with the lunch, though, we're talking about arbitration. It was three and a half days of the arbitration during that week. Two three-hour sessions. The break time for lunch was an hour and a half, but the lunch was probably more like an hour. Even if you added the lunch to it, you still don't get to 40 hours of actual work time. I counsel saying that maybe we should look at getting to and from the workplace, but I think that that's pretty settled, that that's not something that you do. It's not counted as a work hour. The court reached its conclusions based on what was presented before the court. As far as the no records being kept, one, under the CFR regulations, if you have a set schedule, that takes care of the record issue. But more importantly, even if records were required to be kept, it's a two-part analysis by this court. This court has said that first you look to see whether overtime was worked. If you reach that conclusion, then the next step is going to be to see how much overtime is worked. If there weren't records kept, there is a laxing of that requirement for the second step. The lower court found that that first part wasn't met. The judge didn't even have to get to the second part because the second part only comes into play once you found that there were hours worked overtime. This court found that based on the testimony of Ms. Needs, Mr. Anton, Lynn, basically the testimony of everyone except for the testimony of Ms. Jenkins, that there was no overtime work, there was no need for overtime, and that Ms. Jenkins was just mistaken or wrong. I don't know what to say about credibility issues. That is . . . He makes a slightly different argument that you might want to address. He says that, Mr. Burns, that the district court failed to apply the burden relaxing framework laid out by the Supreme Court in Anderson, and that in so doing, the district court committed an error of law insofar as it went about weighing the evidence of whether or not Ms. Jenkins worked overtime. You responded that it doesn't really matter what standard the district court applied because the conclusion it reached was a plausible evaluation of the facts measured against any of the standards. I understand that. My question with that framework is, did the district court err in failing to apply Anderson? Can we tell from what he wrote whether he did that or not? Yes. It's my understanding that Anderson gave that two-part analysis. And the two-part analysis . . . I'm asking is, did the district court violate Anderson? No. No, Your Honor. Tell me why not. Because Anderson says that the first step is to find whether there is overtime worked and then there is a relaxed standard after that to show the amount of overtime worked. The district court made a ruling that there was no overtime worked during that time period or any time period that Ms. Jenkins worked there. Therefore, there is no getting to the second step of the analysis that Anderson set forth. So, yeah. But what I'm also saying that even if you would have . . . the district court would have applied the . . . I'm going back to the lunch, Your Honor. But even if the district court had . . . had given her the benefit of the doubt on the number of precise hours, the fact is that there was enough in the record to show that Ms. Jenkins, quite frankly, didn't work those hours, didn't come close to working those hours. She came into work. The record shows that not only she would come into work, she would do her schoolwork at her desk. She would do other things other than work at her desk. The record also was that Ms. Jenkins said that she wanted to stay later sometimes because she wanted to work on her schoolwork afterwards. And Mr. Anton let her have the key so that way she could do that. That's certainly not work for Anton Legal. It's for herself. She wasn't required to be there. She wasn't performing any work duties. He gave her a chair. And that was about it on the record, Your Honor. Did that address that issue? I think that's all I have, Your Honor. A couple quick points. With respect to the work week, my colleague and the district court say there's evidence that it began on Monday. I don't know what that evidence is. So when you write your opinion, if you conclude that, please tell us what that evidence is. On the lunch issue, I think my colleague has misunderstood my argument about employees going to lunch together. The question is not whether they're together. It's not whether they're on the work site. It's whether they're compelled to be there. And I think that the only inference that can be drawn from this set of facts is that Ms. Jenkins was compelled to be on site during the lunch. And if that's not a reasonable inference, you ought to vacate the judgment, remand to the district court and say, well, figure out factually what happened. Was she compelled to be here or not? And then, Judge Marcus, you had a series of questions about the Anderson decision. I think to split it up, there's two questions. One, was it applied? And second, was it harmless? We know he never mentions it, but he doesn't have to. I mean, he never specifically cites to Anderson. He doesn't, exactly. When you folks submitted your proposed findings of fact and conclusions of law, I take it you cited to Anderson. We did not. I don't think, I looked through the record. I know you weren't the trial lawyer, but was that cited by anybody? I looked for it and I couldn't find it, but that's not a preservation problem for us because there is an 11th Circuit case that is called Secretary against United States Department of Labor against Preston, footnote 5. It's a 2017 decision written by Judge Newsom. Parties can most assuredly waive positions and issues on appeal, but not individual arguments, let alone authorities. And I think the argument was preserved by us. Where is that record citation? It's like pages 70 and 71. I don't see where I put it out of my notes, but I think it's pages 70 and 71 of the fifth day of the bench trial. I believe that's like Doc 130 or 131. And that's where Ms. Sass is making the argument there's a burden shifting here. She doesn't cite Anderson, but she's making the argument and I think that's sufficient to preserve the point. So, anyway, to boil it down, Judge Margaret, you're approaching the question from the right perspective. It's just a question of what the outcome is. Was it applied? And if it wasn't applied, is that harmless? So we're asking you to vacate the judgment. Also, if you do vacate the judgment, vacate the cost order and remand for further proceedings. Thank you. Thank you, gentlemen. Dye versus Tepco building. Ms. Gilbride.